## Davino v. Tyrone Township

*David K. James,* for plaintiffs.

*Henry O. Heiser,* for defendants Tyrone Township and Edward Lee Mort.

KUHN, *J.,* February 22, 1989— Every law student is taught that bad facts make bad law. This case is no exception.

On March 11, 1988, we determined that defendants, Tyrone Township and Township Sewage Enforcement Officer (SEO), Edward Lee Mort, were immune from suit pursuant to 42 Pa.C.S. §8541 and §8545.

Even plaintiffs conceded that counts I and III alleging negligence must be dismissed because of those immunity provisions. At issue, however, was count II, an assumpsit count. We have taken this opportunity to carefully review and revise, if necessary, our earlier opinion of the seemingly divided lower court views of the issue presented.

Briefly, plaintiffs allege that they purchased an unimproved lot in Foxwood Estates, a development in Tyrone Township, for the purpose of constructing their home at that location. Mort, in his capacity as SEO, conducted a percolation test, designed the sewage system, issued a sewage permit, and supervised and approved construction of the sewage system on the lot. Within one year of use, the system developed problems. Plaintiffs claim that the system was installed at a location which did not

qualify for placement of a conventional system under the Pennsylvania Sewage Facilities Act of 1966.

In count II, plaintiffs allege that when they applied for a sewage permit and paid for the same, the township contractually agreed to perform the appropriate tests in compliance with the Sewage Facilities Act. In reliance upon the township's expertise and undertaking, plaintiffs state they materially changed their position to their detriment by constructing a residence on the lot. The township's breach of this contractual arrangement is alleged to be its negligent performance of its undertaking, its failure to perform its duty in a workmanlike manner, and its failure to exercise ordinary skill and reasonable care. They sue for lost property value and the cost of pumping out their system.

In their motion for judgment on the pleadings, the township and Mort claim that they are immune from liability pursuant to provisions of the Political Subdivision Tort Claims Act.[1] This act was enacted in response to the abolition of the judicially created doctrine of government immunity for tort liability by the decision in *Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1977).

The general grant of governmental immunity is set forth in 42 Pa.C.S. §8541 which provides:

"Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of an injury to a person or property caused by any act of the local agency or an employee thereof or any other person." A township is a local

---

1. Act of November 26, 1978, P.L. 1399, as amended, formerly 53 P.S. §5311.101-5311.803, repealed and substantially re-enacted by Act of October 5, 1980, as amended, 42 Pa.C.S. §8501-8564.

agency. *Louey v. Germany Township,* 28 Adams Leg. J. 97 (1986).

An employee of a local agency is only liable for actions taken within the scope of his duties to the same extent that the local agency is liable. 42 Pa.C.S. §8545. Mort is an employee of the township. 42 Pa.C.S. §8501.

The act specifically provides exceptions to the grant of immunity for damages arising from an injury but only if (1) the damages would be recoverable under common law or a statute if the immunity defense were not available and (2) the injury was caused by the negligent act of the local agency or its employee, acting within the scope of his duties, with respect to any of eight identified categories (none of which apply here). 42 Pa.C.S. §8542.

Even though the act did not explicitly except assumpsit actions from the grant of immunity, we are convinced that the act was generally not intended to immunize a local agency from assumpsit suits. We reach this conclusion based upon several factors. First, as noted earlier, the act was passed in response to the *Ayala* court's decision to abolish governmental immunity for tort liability. Second, the title of the act, referring only to tort claims, may be considered. 1 Pa.C.S. §1924. Third, although the act does not define the term "injury" we can consider the numerous factors listed in 1 Pa.C.S. §1921(c)(1)-(6) in concluding that the legislature intended to include only tort injuries within the meaning of "injury" in the statute definition. The report of the Joint State Government Commission on Sovereign Immunity which formed the basis of the act stated that:

"[R]etention of sovereign immunity assures that the commonwealth will not be required to process

and defend various litigation brought against it in areas where risk management is totally uncertain at this time . . ." May 1978, report at 10. Risk management in contract matters is more certain than in tort claims. Furthermore, the consequence of including damages from assumpsit actions within the protective cloak of governmental immunity would be the inability to sue local government for breach of any contract because the act only provides exceptions for negligence action in those designated areas. The legislature surely never intended such a result.

The conclusion that the act generally does not prohibit litigating assumpsit claims does not end our inquiry. Each party hereto has cited numerous cases supporting their respective position. We will examine each case in chronological order and attempt to draw some sense of logic and authority for the conclusion we must reach.

First, citing *Turner v. Martz,* 42 Pa. Commw. 328, 401 A.2d 585 (1979), plaintiffs claim that they have acquired a vested right in the sewage permit which entitles them to pursue their assumpsit count. In *Turner* the plaintiffs bought the land on the basis of a sewage permit issued by Martz, the township permit officer. After plaintiffs built their home, the sewage system failed to function properly. Plaintiffs sued the township and Martz in tort for negligently performing the soils test and in assumpsit for breach of contract. They contended that when the township accepted their fees and issued a permit they materially changed their position to their detriment in reliance upon that permit.

Defendants in *Turner* filed preliminary objections in the nature of a demurrer. The court noted that, as a general rule, a municipal permit issued illegally, or in violation of law, or under a mistake of

fact, confers no vested right in the permit and may be revoked. However, the Commonwealth Court in *Department of Environmental Resources v. Flynn,* 21 Pa. Commw. 264, 344 A.2d 720 (1975) had previously held that this rule is subject to an exception:

"[W]here the landowner has no means by which he could determine that a sewer permit was improperly issued, where he obtained the permit and used it in good faith and where he relied upon the permit and made a large financial investment based upon its validity, then the owner does acquire a vested right in a municipal permit." *Turner* at 332, 401 A.2d at 587.

*Turner* held that plaintiffs had acquired a vested right in accordance with *Flynn* and reversed the trial court's holding sustaining defendant's demurrer. Interestingly, however, the court also observed that *Ayala* had abolished governmental immunity from tort liability based upon negligent conduct. The opinion then cited *King v. Sullivan,* 68 D. & C. 2d 318 (1974). There, the issue was whether a municipality can be sued for the alleged negligence of its employee when the employee issues a permit for an individual sewage disposal system but the soil conditions do not comply with the state minimum standards. Ruling that the municipality owed a duty of care to a permit holder who acts to his detriment in reliance upon the permit the *King* court specifically observed that *Ayala* opened the door for negligence litigation against a municipality.

We can only assume that the *Turner* court intended to speak to both the negligence and assumpsit counts despite the reference to *Ayala* and *King.* Nevertheless, it is curious to note that the vested right created in *Flynn* was the right not to have a permit revoked by the issuing municipality in cer-

tain circumstances and not, as *Turner* held, the right of the landowner to sue the municipality for damages from improper issuance of the permit. *Flynn* has been cited on other occasions to support the proposition that a landowner may have the vested right to retain a permit, *Petrosky v. Zoning Hearing Board of Upper Chichester Township*, 485 Pa. 501, 402 A.2d 1385 (1979); *Highland Park Community Club of Pittsburgh v. Zoning Board of Adjustment*, 509 Pa. 605, 506 A.2d 887 (1986), however, neither *Flynn* nor *Turner*[2] has ever been cited by any other appellate court of this commonwealth to support a claim for damages when a permit was issued improperly. Nevertheless, *Turner* continued to be cited by lower courts.

*Turner* was followed in *Schreck v. North Codorus Township*, 98 York Leg. Rec. 25 (1984), to overrule defendants' demurrer to a claim in assumpsit. There plaintiffs claimed that when the township issued a sewer permit, charged fees for the same and held itself out as an expert in the location and/or design of sewage disposal systems a contractual relationship was formed which placed a duty on the township to properly design and locate the system for plaintiffs.

*Turner* was again followed to overrule a defendant's motion for summary judgment on an assumpsit claim in *Hurst v. East Hanover Township*, 33 D. & C.3d 157 (1984). There plaintiffs alleged that the township improperly issued a sewage permit for land upon which they built a home but which was not appropriate for a septic system. This court felt that the act did not apply to contract

_____

2. In-shepardizing *Flynn* and *Turner* we discovered that *Flynn* had been discussed in 12 separate appellate cases and *Turner* has been cited in only two appellate opinions.

actions and that on the basis of *Turner* a cause of action in assumpsit was stated.

The following year in *Newhart v. McFadden,* 35 D. & C.3d 155 (1985) the court held that the act post-dated the facts in *Turner* and applied to any cause of action after its effective date even if in assumpsit. Plaintiffs alleged that the Department of Health impliedly warranted the on-lot sewer system for which it issued a permit and that in detrimental reliance upon that permit plaintiffs purchased the improved real estate because the system later malfunctioned. Although *Newhart* ruled that no implied warranty exists for the issuance of a sewer permit, the case is worth noting in light of the discussion of the cases which follow.

In *Gall v. Allegheny County Health Department,* 98 Pa. Commw. 175, 510 A.2d 926 (1986) plaintiffs became ill as a result of drinking parasite-infested water from a public water system. They sued the City of McKeesport and the municipal authority asserting theories of negligence and breach of implied warranty of merchantability and fitness. The court held that the act confers immunity on a municipality which negligently supplies impure water to the public. More importantly, however, in sustaining demurrers to both causes of action, the court stated:

"Having held that municipalities have no liability for supplying impure water on grounds of negligence, we cannot allow recovery under a theory of breach of implied warranties. To do so would not merely achieve an inconsistent result, it would completely defeat the legislative grant of immunity." 98 Pa. Commw. at 182, 510 A.2d at 929.

*Artley v. Boyle,* no. 83-2388, Lycoming County (January 12, 1987), involved a claim against the township for breach of warranty for the improper

issuance of a sewer permit. The trial court dismissed the claim because of the applicability of governmental immunity, citing *Newhart.*

In *Sieg v. Gestevitz,* 70 Lancaster L. Rev. 453 (1987), plaintiffs sued the township and its sewage enforcement officer on a theory of breach of implied warranty after it was discovered that the officer improperly conducted a soils test and they were required to purchase and install an alternate septic system. The court agreed with defendants' assertion that plaintiffs were immune from suit because the assumpsit action was a tort action in disguise. Furthermore, this court felt that *Turner* was decided solely upon negligence, not contract principles, and therefore, the act applied.

Both *Newhart* and *Sieg* became the basis for dismissal of a breach of warranty claim for improper issuance of an on-site sewage permit in *Fulginiti v. Township of Tobyhanna,* 33 Monroe Leg. Rep. 712 (1987). Furthermore, this case held that a permit is not a contract but only a document granting a person the right to do something.

The most recent case to discuss this question, according to our research, is *Agresto v. South Newtown Township,* 28 Cumberland L.J. 387 (1988). Again, plaintiffs sued in both negligence and assumpsit for damages arising from the improper issuance of an on-site sewage permit. In upholding the assumpsit count against defendant's motion for judgment on the pleadings, the court ruled that, on the basis of *Turner,* a cause of action was stated, and furthermore, the act was not intended to cover assumpsit actions.

Thus, we are left with the perplexing conclusion that the courts of this commonwealth which have addressed the issue before us are evenly divided. With much reluctance, however, we believe we

must grant defendants' motion and dismiss the assumpsit count. As we stated in our earlier opinion:

"We realize that the result we reach is harsh. Prospective homeowners rely upon municipal expertise in the area of soils testing, sewage system construction, and installations. They pay fees to the municipality for this purpose and in reliance on the issuance of a permit, make substantial financial investments." 50 D. & C.3d 115, 120 (1987).

Nevertheless, we are mindful of the objectives of the legislature in adopting the act.[3] By so doing, the legislature has "announced a clear policy that government should be free to do what must be done in their day-to-day operation without fear of civil liability." *Franklin Township v. Herring,* 28 Adams Leg. J. 1, 2 (1986).

We, therefore, are compelled to conclude, upon our best judgment, that the act does not immunize local government from civil liability in assumpsit actions arising from the issuance of a sewer permit unless that action is based upon underlying negligent conduct which, if not dismissed because of governmental immunity, would achieve an inconsistent result and completely defeat the legislative grant of immunity. *Gall, supra.* A careful reading of plaintiffs' complaint reveals that the SEO's alleged negligence is the underlying conduct which resulted in the improper issuance of a permit.

We distinguish *Turner* as being written before the act and before the Commonwealth Court's later pronouncement regarding inconsistent results in *Gall.*

---

3. See The Political Subdivision Tort Claims Act, Pennsylvania's Response to the Problems of Municipal Tort Liability, 84 Dick. L. Rev. 717 (1980).

Wherefore, we enter the attached

ORDER OF THE COURT

And now, February 22, 1989, the order of March 11, 1988, on motion for judgment on the pleadings filed by defendants, Tyrone Township and Edward Lee Mort, is confirmed for the reasons set forth in the attached opinion.